IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MARYLAND STATE CONFERENCE : | |
| OF NAACP BRANCHES, ET AL. : | |
| : | |
| v. : | CIVIL NO. CCB-06-1863 |
| : | |
| BALTIMORE CITY POLICE : | |
| DEPARTMENT, ET AL. : | |

...o0o...

**MEMORANDUM**

The complaint in this case asserts various constitutional and state law claims against the Baltimore City Police Department ("BPD"), the Mayor and City Council of Baltimore ("City"), the Mayor individually, current and former BPD commissioners, and individual police officers, collectively "the City defendants", for allegedly unlawful arrests (Counts 2, 5, 8, 9, 12). It also asserts claims against the State of Maryland, the Secretary of the Department of Public Safety and Correctional Services, the Commissioner of the Division of Pretrial Detention, current and former wardens at the Central Booking and Intake Center ("CBIC"), and CBIC officers, collectively "the State defendants", for allegedly unlawful strip searches and "over detentions" at CBIC (Counts 3, 4, 6, 7, 8, 10, 11, 13, 14). Further, Count 1 asserts against the City a claim that the Baltimore City loitering ordinance is unconstitutional as applied, or in the alternative unconstitutional on its face. The complaint seeks certification for a class consisting of "arrestees who were (1) arrested by the Police Department without probable cause and (2) released without charges after being booked at CBIC." (Compl. ¶ 135.) The plaintiffs, who seek only equitable and not monetary relief for the class, have not formally moved for class certification at this time.

The State defendants have answered the complaint; the City defendants have filed a motion to dismiss or for summary judgment and a motion to certify to the Maryland Court of

Appeals the question of the constitutionality of the loitering ordinance.  These issues have been fully briefed.

First, the City defendants request that I deny the request for class certification, pointing to the lack of an identified unlawful policy uniformly applicable to the proposed class and to the need to determine whether there was probable cause for each allegedly unlawful arrest, "an individualized and fact specific inquiry" (Defs.' Mem. at 18) that would make the proposed class unsuitable for certification.  More specifically, the defendants identify three theories they attribute to the plaintiffs on which class certification might be based: (1) that arrests for certain "quality of life" crimes are categorically illegal; (2) that the decision of the State's Attorney not to prosecute certain crimes establishes that arrests for those crimes were unlawful; and (3) that the use of a performance evaluation system for police officers based on the number of arrests is unlawful.  (Defs.' Reply Mem. at 12-13.)  The City defendants argue strongly, however, that none of these theories, even if supported by the facts, is legally correct, as neither a prosecutor's decision not to prosecute nor a performance evaluation system based on arrests would render unlawful an arrest supported by probable cause.  (Defs.' Mem. at 14-15.)

In response, the plaintiffs point out that they have not yet moved for class certification and may not do so, although they appear to maintain that class certification is appropriate based on allegations that "the police department, at the direction of the Mayor, engaged in a systematic practice of arresting individuals without probable cause for certain categories of offenses."  (Pls.' Opp'n Mem. at 3-4, 15.)  I am skeptical about the viability of certifying a class as apparently proposed, but agree with the plaintiffs that it would be premature to rule when no motion has been filed.

2

In light of the justifiable concerns raised by the City defendants, however, the plaintiffs will be required to make their decision about whether to seek certification at an "early practicable time". Further, these concerns may affect the scope of discovery. While the defendants agree that the plaintiffs may legitimately seek discovery about policies of the City and the BPD in connection with their individual claims (Defs.' Reply Mem. at 22), broader class discovery may not be permitted in the absence of the plaintiffs' demonstrating that they have a viable class to propose.

Second, the defendants apparently argue that all claims against the City and the Mayor should be dismissed, citing *Clea v. Mayor and City Council of Baltimore*, 312 Md. 662, 541 A.2d 1303 (1988) and *Chin, et al. v. City of Baltimore, et al.*, 241 F. Supp. 2d 546 (D. Md. 2003) (Blake, J.). *See* Defs.' Mem. at 32-4, 37, 40; Defs.' Reply Mem. at 25-26. It is not necessary and would be premature to decide the full scope of these cases at this time, before the plaintiffs have an opportunity to establish claims against the City and the Mayor for their own actions. (Pls.' Opp'n Mem. at 35-6, 38-41.) On the other hand, there appears to be little dispute[1] that the BPD is entitled to sovereign immunity from claims for monetary damages, but not equitable relief,[2] under state law, and that the City is entitled to governmental immunity for the common

---

[1] The defendants initially assert that the BPD has sovereign immunity in all tort actions, both common law and constitutional, and that the City enjoys governmental immunity when acting in a governmental capacity. (Defs.' Mem. at 36-37, 39.) The plaintiffs do not contest the BPD's immunity for damages in any tort action nor do they dispute the City's governmental immunity, but they argue that they can obtain equitable relief from the BPD for its constitutional torts. (Pls.' Opp'n Mem. 37-38, 42.) The defendants in turn do not dispute this point, thereby reaching agreement on the scope of immunities accorded to the BPD and the City. (Defs.' Reply Mem. 24-25.)

[2] I am not currently ruling on whether the plaintiffs will ultimately be found to have standing to obtain injunctive relief.

law torts asserted in the complaint.  *See Baltimore Police Department*, *et al. v. Cherkes*, 140 Md. App. 282, 780 A.2d 410, 426, 429, 436 (Ct. Spec. App. 2001).

Third, the City defendants have asked for dismissal or summary judgment on the individual plaintiffs' claims for unlawful arrest.  That will be denied.[3]  The claims plainly are sufficient to survive a Rule 12(b)(6) motion, and it would be premature to grant summary judgment in the face of conflicting affidavits involving what the defendants agree is an "individualized and fact specific inquiry" into probable cause.[4]  Similarly, it would be premature to decide whether any individual defendant is entitled to qualified immunity before development of the particular facts against which the defense must be evaluated.

Finally, I will deny without prejudice the motion to certify.  The plaintiffs initially make an "as applied" challenge to the enforcement of the loitering ordinance, arguing that the BPD has interpreted it incorrectly to allow an arrest of persons "engaged in no wrongdoing merely for standing on the public sidewalks." (Compl. ¶ 145.)  Discovery into the claims of the individual plaintiffs may illuminate whether the BPD is in fact applying such an interpretation and may affect the scope and necessity of certification.  While I agree with the defendants that certification may be justified to obtain an authoritative construction of a state law before a federal court rules on its constitutionality, *see PSINet*, *Inc. v. Chapman*, 317 F.3d 415, 424-25 (4th Cir. 2003); *NAACP Anne Arundel County Branch v. City of Annapolis*, 133 F. Supp. 2d

---

[3] I will permit the City to file its motion to dismiss or for summary judgment as to plaintiff Evan Howard, but deny the motion for summary judgment and deny in part and grant in part the motion to dismiss for the same reasons set forth in the body of this memo.

[4] Indeed, the defendants concede material factual disputes exist as to plaintiffs Stoner and Lowrey.  (Defs.' Reply Mem. at 1.)


795, 806 (D. Md. 2001) (Blake, J.), I think it better to determine the full context of the "as applied" challenge before deciding whether certification is needed.

A separate Order follows.

   December 1, 2006                                          /s/
        Date                                                   Catherine C. Blake
                                                             United States District Judge